PEOPLE *ex rel.* WALSH *v.* MACLEAN *et al.*, Police Commissioners.

(*Supreme Court, General Term, First Department.*   January 24, 1890.)

MUNICIPAL CORPORATIONS—POLICEMEN—DISMISSAL.

On a charge against a policeman for violating a rule of the department, in that he "drew his pistol on a citizen, and fired a shot, not in self-defense," he explained that he did not draw his pistol on, or fire at, or see, the injured man until after firing the shot; that he fired the pistol in the air to attract other officers to assist him in watching suspicious characters.   *Held*, that a case was not made out sufficient to justify his dismissal.   DANIELS, J., dissenting.

*Certiorari* to review judgment of the police commissioners, dismissing Edward Walsh from the police force.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Henry A. Gumbleton,* for relator.   *John J. Delaney,* for respondents.

BRADY, J.   The specification of the alleged violation of the rules of the department was that the relator "drew his pistol on a citizen, and fired a shot, not in self-defense."   The rule is as follows:   "Rule 199.   Captains shall make charges against any patrolman under their command who shall, through neglect of duty, fail to discover a homicide, burglary, or serious breach of the peace committed on his beat during his tour of duty, or who shall neglect to take proper measures to arrest any parties guilty of such offenses, or who, while on duty, shall draw his pistol on a citizen, or use his club, except in self-defense."   There is no evidence in the return showing a violation of this rule in any respect.   It contemplates an intentional use of the pistol,—in other words, that it shall be drawn upon a citizen intentionally, and not in self-defense.   The circumstances under which the pistol was drawn are detailed by the relator, and by him only.   He did not draw it upon Mr. Coleman, the injured man, or upon any one.   He did not see Coleman until after the shot was fired.   He fired to attract a brother officer, while watching suspicious characters, and therefore in performance of one of his duties.   He fired it in the air, and this means, in accordance with the popular or general understanding of that phrase, that he held his pistol upward, and it was that use of it which resulted in the accident to Mr. Coleman, which was indeed an accident, and wholly unintentional.   The ball from the pistol no doubt struck some part of the structure of the elevated railway, and ricochetted or deflected, and in consequence struck Coleman.   This would and should explain

the occurrence. The history of accidents, and indeed of wars, show many injuries arising from the deflection suggested, which it might be interesting to embrace here by way of illustration, but it is not necessary, and therefore may, and perhaps should, be omitted. However this may be, regarded from a scientific stand-point, the fact still remains that the relator did not, intentionally or otherwise, point his pistol at any person. His offense, if any, was a careless use of his weapon, the possible consequences of which he did not foresee. The evidence being insufficient, either in fact or in its tendency, to show the alleged violation of duty, we have the power to correct the error committed in removing the relator. *People* v. *Commissioners*, 82 N. Y 358. For these reasons the proceedings of the commissioners should be reversed, and the relator restored. Ordered accordingly.

VAN BRUNT, P. J., concurs.

DANIELS, J., (*dissenting.*) The charge made against the relator was that, on the 20th of October, 1889, he drew his pistol on a citizen, and fired a shot, not in self-defense, but in violation of rule 199; and it was a violation of that rule, as contained in the case, for a member of the force while on duty to draw his pistol not in self-defense on a citizen. The relator, by his counsel, admitted that he shot John Coleman in the abdomen on the morning of the 20th of October, 1889, and the other testimony which was given proved the fact to be that Coleman was found near a pillar of the elevated railroad, and stated that he had been shot, and was thereupon taken to the station-house, and finally sent to the hospital, where he was at the time of the trial before the commissioners. In exoneration of the relator it was stated that he was following and watching two other persons, who had aroused his suspicions, and discharged his pistol in the air to attract the attention of other officers, and to bring them to his assistance. No other pistol shot was heard at or near the time when Coleman received this wound, and no pretense was made that it had been received in any other manner than from the pistol in the hand of the relator, and whether it had been discharged in the manner mentioned by him was a question which addressed itself to the consideration and decision of the commissioners, and as to that fact their decision was adverse to him, and it may very well have been so; for, if the relator had merely discharged the pistol in the air to attract attention, as it was stated he did by himself, it is not reasonable to suppose that the bullet would have taken effect upon the person of Coleman, as it appears to have done. The more rational and probable conclusion is that the pistol was pointed at Coleman, and discharged when pointed in that manner; for in no other way does it appear that the ball could have taken the effect upon his person which it did. The probabilities of the case all point to this use of the weapon by the relator, and not to that mentioned by himself, as a witness on the hearing; and, with this probability before them, the commissioners were justified in concluding that the shot had not been made in the air, as the relator stated it was, but that it was the result of pointing the pistol at the person who was struck by the bullet. The evidence in this manner disclosed supported the conclusion reached by the commissioners and their decision should be affirmed.